UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
WENDY E. WAGNER,                        )
LAWRENCE M.E. BROWN, and                )
JAN W. MILLER,                          )
                                        )   Civil Action No. 11-cv-1841-JEB
                  Plaintiffs,           )
          v.                            )   OPPOSITION
                                        )
                                        )
FEDERAL ELECTION COMMISSION,            )
                                        )
                  Defendant.            )
                                        )
_____ )

**DEFENDANT FEDERAL ELECTION COMMISSION'S
OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY FACTS**

Anthony Herman (D.C. Bar No. 424643)
General Counsel

David Kolker (D.C. Bar No. 394558)
Associate General Counsel

Harry J. Summers
Assistant General Counsel

Holly J. Baker
Attorney

Seth Nesin
Attorney

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street, NW
Washington, DC  20463
Telephone:  (202) 694-1650
Fax:  (202) 219-0260

December 5, 2011

# TABLE OF CONTENTS

Page

I.    THIS COURT'S CRITICAL THRESHOLD ROLE UNDER SECTION
      437h IS TO DEVELOP A FULL FACTUAL RECORD AND THEN TO
      CERTIFY ONLY SUBSTANTIAL CONSTITUTIONAL QUESTIONS.........2

      A.    A Full Factual Record Is Necessary to Adjudicate Constitutional
            Challenges to FECA ............................................................................3

      B.    Development of an Adequate Factual Record Prior to Any
            Certification Is Vital in this Section 437h Case......................................6

      C.    After the Development of a Factual Record, the District Court
            Must Also Make Threshold Legal Determinations and Certify
            Appropriate Questions to the Court of Appeals....................................12

II.   CONCLUSION.................................................................................................15

Plaintiffs' motion for an "order certifying the facts related to this constitutional challenge to the United States Court of Appeals for the District of Columbia Circuit" is both misconceived and premature.  (*See* Plaintiffs' Motion to Certify Facts at 1 (Doc. No. 10).)  2 U.S.C. § 437h establishes an extraordinary procedure under which certain plaintiffs may pursue certification of substantial "*questions of constitutionality*" concerning provisions of the Federal Election Campaign Act of 1971, as amended, 2 U.S.C. §§ 431-57 ("FECA" or "Act") (emphasis added).  But only constitutional questions, *not* "facts," may be certified in the first instance to the en banc court of appeals to decide those questions.  Moreover, the Supreme Court has made clear that such certification should occur only *after* the district court has made findings of fact and made threshold legal determinations.  Prior to certification, the district court should compile a "fully developed factual record" to allow for proper adjudication in the court of appeals.  *Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 192 n.14 (1981).

Before certifying any constitutional questions, the district court must also make certain threshold legal determinations, including whether plaintiffs have standing and whether the constitutional issues they raise — here, regarding temporary restrictions on political contributions that plaintiffs voluntarily assumed when they *chose* to become federal contractors — are substantial enough to merit certification.  Plaintiffs' motion is therefore premature, regardless of whether it is a request that this Court make findings of fact or a motion "to decide the constitutional questions presented," as suggested at the end of plaintiffs' brief. (Memorandum of Law in Support of Plaintiffs' Motion to Certify Facts at 6 (Doc. No. 10-8) ("Mem.")).

After the Commission has filed its answer and the parties have conferred under Rule 16, the Court should set a reasonable discovery schedule, to be followed by the parties' proposed

findings of fact and briefing as to any factual disputes and potential questions to be certified.  In this fashion, this Court can perform its proper gatekeeper role prior to any consideration of the matter by the en banc court of appeals.[1]

I.      **THIS COURT'S CRITICAL THRESHOLD ROLE UNDER SECTION 437h IS TO DEVELOP A FULL FACTUAL RECORD AND THEN TO CERTIFY ONLY SUBSTANTIAL CONSTITUTIONAL QUESTIONS**

Section 437h, the extraordinary judicial review provision plaintiffs invoke, was added to the Federal Election Campaign Act in 1974 to provide expedited consideration of anticipated constitutional challenges to the extensive amendments to the Act that year.  *See* Federal Election Campaign Act Amendments of 1974, Pub. L. No. 93-443, § 208(a), 88 Stat. 1263, 1285-1286 (1974).  Section 437h provides:

> The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act.  The district court immediately shall certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc.[2]

---

[1]     Plaintiffs may have been able to avoid confusion about the district court's role in section 437h cases had they complied with this Court's local rule requiring that they confer with opposing counsel about the substance of non-dispositive motions like this one prior to filing.  *See* L.R. 7(m).

[2]     Under the original statutory scheme, certified constitutional questions could be appealed directly from the en banc court of appeals to the Supreme Court, and both courts were required "to advance on the docket and to expedite to the greatest possible extent the disposition of any matter certified . . . ."  2 U.S.C. § 437h(b), (c) (1974).  In 1984, the expedition requirement and similar provisions in other statutes were repealed because "[t]he courts are, in general, in the best position to determine the need for expedition in the circumstances of any particular case, to weigh the relative needs of various cases on their dockets, and to establish an order of hearing that treats all litigants most fairly."  H.R. Rep. No. 98-985, at 4 (1984).  *See* Pub. L. No. 98-620, § 402, 98 Stat. 335 (1984) (repealing section 437h(c)).  The provision for direct appeal was removed in 1988.  Pub. L. No. 100-352, § 6(a), 102 Stat. 662 (1988).

Although the statute states that the district court should "immediately" certify questions, the

Supreme Court has made clear that a district court presented with a request to certify under

section 437h must conduct several threshold inquiries prior to any certification:

> The unusual procedures embodied in this section are, at the very least, circumscribed by the constitutional limitations on the jurisdiction of the federal courts. A party seeking to invoke § 437h must have standing to raise the constitutional claim. Furthermore, § 437h cannot properly be used to compel federal courts to decide constitutional challenges in cases where the resolution of unsettled questions of statutory interpretation may remove the need for constitutional adjudication. Moreover, we do not construe § 437h to require certification of constitutional claims that are frivolous, or that involve purely hypothetical applications of the statute. Finally, as a practical matter, immediate adjudication of constitutional claims through a § 437h proceeding would be improper in cases where the resolution of such questions required a fully developed factual record.

*Cal. Med. Ass'n*, 453 U.S. at 192 n.14 (citations omitted) (regarding frivolousness, citing*, inter*

*alia, Cal. Water Service Co. v. City of Redding*, 304 U.S. 252, 254 (1938) ("[i]t is therefore the

duty of a district judge … to scrutinize the bill of complaint to ascertain whether a substantial

federal question is presented … .")).

### A. A Full Factual Record Is Necessary to Adjudicate Constitutional Challenges to FECA

The need for the district court to develop a factual record in constitutional challenges to

FECA brought under section 437h has been settled for more than 30 years. *See, e.g., Bread*

*Political Action Comm. v. FEC* ("*Bread PAC*"), 455 U.S. 577, 580 (1982) (district court is

required to make findings of fact before certifying constitutional question to en banc court of

appeals); *Cal. Med. Ass'n*, 453 U.S. at 192 n.14 (certification "would be improper in cases where

the resolution of such questions required a fully developed factual record"); *Mariani v. United*

*States*, 212 F.3d 761, 767 (3d Cir. 2000) (en banc) ("The Supreme Court also has interpreted §

437h to require the district court to develop a record and make findings of fact sufficient to allow

the en banc court of appeals to decide the constitutional issues."); *FEC v. Central Long Island Tax Reform Immediately Comm.*, 616 F.2d 45, 49 (2d Cir. 1980) (en banc) (noting that case had been remanded to the district court "to take evidence, make factual findings, and certify to us the record and the constitutional questions for resolution."); *Buckley v. Valeo*, 519 F.2d at 901-904 (D.C. Cir. 1975) (Appendix B) (case remanded to district court to identify constitutional issues, take evidence, make findings of fact and certify constitutional questions).

More generally, in cases construing FECA and its predecessors, federal courts have long recognized the need for a "concrete factual setting that sharpens the deliberative process especially demanded for constitutional decision." *United States v. Automobile Workers*, 352 U.S. 567, 591 (1957). In *Colorado Republican Federal Campaign Committee v. FEC ("Colorado I")*, 518 U.S. 604, 624-25 (1996), for example, Justice Breyer pointed out the importance of record evidence in reviewing the constitutionality of FECA. On remand, the Tenth Circuit in turn remanded the case to the district court and further explained the need for factual development:

> [T]he issues are too important to be resolved in haste. It seems inevitable that not only this court but the Supreme Court itself will have to address these issues. We will both benefit by the parties fleshing out the record with any evidence they and the district court deem relevant to the issues' resolution and by the district court's resolution of the legal issues in the first instance.

*FEC v. Colo. Republican Fed. Campaign Comm.,* 96 F.3d 471, 473 (10th Cir. 1996). When the case reached the Supreme Court a second time, the Court made ample use of the factual record that had been developed on remand. *See generally FEC v. Colo. Republican Fed. Campaign Comm. ("Colorado II")*, 533 U.S. 431, 457-60 (2001).

In *Khachaturian v. FEC*, 980 F.2d 330, 331-32 (5th Cir. 1992) (en banc), when a district court immediately certified a challenge to the Fifth Circuit under section 437h, the court of

appeals remanded the case without considering the merits because the "district court did not make the requisite threshold inquiry … ."  *Id.* at 331.  The court of appeals instructed the district court on remand to "first determine whether Khachaturian's claim is frivolous … ."  *Id.* at 332. If, at the threshold, the question was determined not to be frivolous, the Fifth Circuit instructed the district court to proceed as follows:

1.  Identify constitutional issues in the complaint.
2.  Take whatever may be necessary in the form of evidence — over and above submissions that may suitably be handled through judicial notice …
3.  Make findings of fact with reference to those issues.
4.  Certify to this court constitutional questions arising from [the above].

*Id.* (citing *Buckley v. Valeo*, 519 F.2d 817, 818 (D.C. Cir. 1975) (en banc)).[3]

Here, plaintiffs raise two constitutional claims regarding the restriction on political contributions found in 2 U.S.C. § 441c for "individuals such as the three plaintiffs in this action who have contracts with agencies of the federal government under which they provide services to the government."  (Mem. at 1.)  Although plaintiffs may believe that the only relevant facts are those contained in their complaint and in the short, untested declarations they attached to their motion, the Commission is entitled to develop facts to support its own legal arguments and theories.  The Commission's answer is not due until December 18, 2011, and it has conducted no discovery.  Findings of fact and certification of constitutional questions to the court of appeals at this early stage would plainly be premature.

---

[3]     Plaintiffs appear to assert that constitutional claims as to FECA brought by those eligible to vote for President "*must* be determined under 2 U.S.C. § 437h" (Mem. at 4; emphasis added), but plaintiffs were not required to choose the section 437h procedure, and many constitutional challenges to FECA have been resolved under ordinary federal court procedures.  *See, e.g., Colorado II*, 533 U.S. 431.

**B.     Development of an Adequate Factual Record Prior to Any Certification Is Vital in this Section 437h Case**

Although plaintiffs have brought this case on their own behalf, their complaint, if successful, would likely provide relief to all or many other "individuals who have government contracts." (Compl. ¶ 1 (Doc. 1).) Thus, whether this case is properly characterized as an "as-applied" or "facial" challenge is irrelevant to the appropriate scope of discovery, because the challenge, if successful, would invalidate section 441c as applied to a great number of persons. *See Doe v. Reed*, 130 S. Ct. 2811, 2817 (2010) ("The label [of 'as-applied' or 'facial'] is not what matters. The important point is that plaintiffs' claim and the relief that would follow … reach beyond the particular circumstances of these plaintiffs."). The Commission must therefore have an opportunity to take discovery not only to understand plaintiffs' specific situations, but also to develop a record about the broader ramifications of the relief plaintiffs seek.

In particular, the Commission needs an opportunity to compile a record of legislative facts. Unlike adjudicative facts, which "'relate to the parties, their activities, their properties, [and] their businesses,'" legislative facts are broader in scope and import and may be disputable." Fed. R. Evid. 201 advisory committee's note (quoting Kenneth Davis, 2 *Administrative Law Treatise* 353 (1958)). They are usually more "general" than adjudicative facts and "help the tribunal decide questions of law and policy." *Friends of the Earth v. Reilly*, 966 F.2d 690, 694 (D.C. Cir. 1992) (internal quotation marks and citation omitted); *see also, e.g., Langevin v. Chenango Court, Inc.,* 447 F.2d 296, 300 (2d Cir. 1971) ("questions of law and policy and discretion") (Friendly, C.J.).

Federal courts have frequently cited legislative facts (although not always under that label) in determining the constitutionality of campaign finance laws. In the seminal campaign finance case, *Buckley v. Valeo*, the D.C. Circuit cited, among other sources, polling data,

519 F.2d at 838-39, n.34; a report concerning illegal contributions by the dairy industry, *id.* at 839 n.36; congressional floor statements, *id.* at 837 n.23, 838 n.28; and a Senate Committee report, *id.* at 839 n.35, 840 n.38.  The Supreme Court explicitly relied on the D.C. Circuit's discussion of these legislative facts.  *Buckley v. Valeo*, 424 U.S. 1, 27 & n.28 (1976) (per curiam).  Likewise, in *McConnell v. FEC*, the case that upheld the key components of the Bipartisan Campaign Reform Act of 2002, 116 Stat. 81, the Supreme Court also relied extensively on legislative facts.  *See, e.g., McConnell v. FEC*, 540 U.S. 93, 122, 129-32 (2003) (discussing "the disturbing findings of a Senate investigation into campaign practices related to the 1996 federal elections"); *id.* at 145 ("Both common sense and the ample record . . . confirm Congress' belief  … [that] large *soft-money* contributions to national party committees have a corrupting influence or give rise to the appearance of corruption."); *id.* ("It is not only plausible, but likely, that candidates would feel grateful for such [large soft-money] donations and that donors would seek to exploit that gratitude." (footnote omitted)); *see also FEC v. Wisconsin Right To Life, Inc.,* 551 U.S. 449, 470 n.6 (2007) (relying on a national survey for the legislative fact that most citizens could not name their congressional candidates).  In *Colorado II*, as well, the Supreme Court concluded that political parties are used as "instruments" by some contributors who wish to support a particular candidate or to create an obligation from officeholders.  533 U.S. at 451-52.  That conclusion was based on legislative facts, such as political committees' habit of giving to competing parties or candidates in the same election.  In discussing these facts, the Court cited a political scientist's statement submitted in the lawsuit, a former Senator's anecdote about a debate among his colleagues, a book by a political science professor, and FEC disclosure reports.  *Id.* at 451-52 & nn.12-13.

Here, a full factual record is important both to "sharpen[] the deliberative process,"

*Automobile Workers*, 352 U.S. at 591, and to avoid any prejudice to the Commission.  Plaintiffs'
first claim is that they are deprived of their rights under the Equal Protection Clause because they
are "not treated equally with individuals and corporations who are similarly situated … ."
(Compl. ¶ 16 (Doc. No. 1).)   But there is no evidence yet about which "individuals and
corporations" may be "similarly situated" to plaintiffs.  FECA has a variety of limits and
restrictions that apply to different individuals and entities in different situations, "[t]he
Constitution does not require things which are different in fact or opinion to be treated in law as
though they were the same," and "[t]he initial discretion to determine what is 'different' and
what is 'the same' resides in the legislatures."  *Plyler v. Doe*, 457 U.S. 202, 216 (1982)
(emphasis and citations omitted).  "Sometimes the grossest discrimination can lie in treating
things that are different as though they were exactly alike."  *Buckley*, 424 U.S. at 97-98.  To
prevail on the merits of their equal protection claim, plaintiffs will likely have to show that
Congress has no rational basis to distinguish among these individuals and groups, and in
particular, to bar federal contributions by those who are negotiating or performing federal
government contracts.  If the case were certified now, before the Commission has even answered
the complaint — let alone conducted any discovery — the court of appeals would be deprived of
the concrete evidence required to make such determinations, and the Commission would lose the
opportunity to compile evidence about whether there are differences among these entities that
justify their disparate treatment.[4]

---

[4]       Plaintiffs state that they "reserve the right to refer in their briefing in the Court of Appeals
and the Supreme Court to other facts supported by their declarations or other proper evidence
and agree that defendant has a similar right with respect to facts on which it wished to rely that
are similarly supported."  (Mem. at 4.)  But fact development belongs in the district court,
including development of legislative facts, before any constitutional questions are certified.

Plaintiffs' second claim is that 2 U.S.C. § 441c infringes on the First Amendment rights either of (i) all individual government contractors, because FECA's general limits on contributions by individuals are allegedly sufficient to achieve the statute's anti-corruption goals; or (ii) some subset of government contractors, because the statute is allegedly not narrowly tailored.  (Compl. ¶¶ 17-19 (Doc. No. 1).)  This claim also requires fact development before it can potentially be certified.  Federal contractors operate under a variety of contractual arrangements and are chosen through different procedures.  Plaintiffs claim that no elected official "has any role in the awarding or implementing of plaintiffs' contracts with federal agencies." (Mem. at 3.)  But even if that statement is correct, it may not be true for other government contractors, and it does not suggest how a narrower statute might distinguish among different federal contractors.  For example, no factual record yet exists to assess the potential relevance of factors such as an elected official's recommendation or urging that an agency hire a particular contractor.  Moreover, apart from the short declarations plaintiffs have supplied with their motion, the record is devoid of information about the number of individuals with such contracts, how they generally obtain such contracts, the type of work that they perform, and the extent to which the contribution ban may have helped prevent corruption or the appearance of corruption.

Creating a record about these matters may require significant time and effort, in part because federal contractors have been prohibited from making contributions for many decades. For this reason, the Supreme Court has noted the "difficulty of mustering evidence to support long-enforced statutes." *Colorado II*, 533 U.S. at 457 ("Since there is no recent experience with unlimited coordinated spending, the question is whether experience under the present law confirms a serious threat of abuse from the unlimited coordinated party spending as the

Government contends." (citing *Burson v. Freeman*, 504 U.S. 191, 208 (1992) (Blackmun, J.))).
As a result, the Commission's factual development may need to include, for example, expert
opinions, third-party declarations, and evidence about the impact of analogous restrictions on
contributions.

The discovery and briefing schedules of three recent section 437h cases illustrate
the importance of assembling an adequate factual record to assist the courts of appeals in
deciding substantial constitutional challenges to FECA.  In *Libertarian National
Committee v. FEC*, 11-cv-562 (RLW) (D.D.C., complaint filed March 17, 2011), plaintiff
originally sought review by a special three-judge district court pursuant to section 403 of
the Bipartisan Campaign Reform Act of 2002, Pub. L. No. 107-155, 116 Stat. 81, 113-14,
but plaintiff amended its complaint in May 2011 to request instead that questions be
certified to the en banc court of appeals pursuant to section 437h.  *See* First Am. Compl.,
*Libertarian Nat'l Comm.* (Doc. No. 13) (May 27, 2011).  In July 2011, the parties agreed
to and the court established a schedule under which discovery will be completed by
February 2012 and briefing as to proposed findings of fact and potential certification of
questions will conclude on June 29, 2012 — more than 15 months after the case was
filed.  *See* Sched. Order, *Libertarian Nat'l Comm.* (Doc. No. 20) (July 27, 2011).

In *SpeechNow.org v. FEC*, 08-cv-00248 (JR) (D.D.C., complaint filed Feb. 14, 2008), the
plaintiffs filed a motion to certify constitutional questions about four months after the case was
filed, but they recognized that the district court's certification should not take place until
discovery had been completed.  *See* Motion for Order to Certify, *SpeechNow.org* (Doc. No. 31)
(June 27, 2008).  The court agreed that the case should only go to the court of appeals "after the
close of discovery and after the entry of findings of fact."  *See* Order, *SpeechNow.org* (Doc. No.

40) (July 29, 2008).  Discovery took several months and was followed by briefing on the proposed findings of fact and other issues.  The district court ultimately issued its memorandum and findings of fact for the D.C. Circuit in August 2009, more than a year after the motion to certify was filed.  *See* Order, *SpeechNow.org* (Doc. No. 70) (Aug. 18, 2009).  The D.C. Circuit handed down its decision in March 2010, more than two years after the case was originally filed.  *SpeechNow.org  v. FEC*, 599 F.3d 686 (D.C. Cir. 2010) (en banc).

Similarly, in *Cao v. FEC*, 08-cv-4887 (HGB) (E.D. La., complaint filed Nov. 30, 2008), the plaintiffs filed a section 437h motion about a month after the case was filed (Pl's Motion to Certify Questions of Constitutionality to the Court of Appeals En Banc (Doc. No. 19) (Dec. 23, 2009), but under the schedule set by the district court, discovery did not end for another six months.  *See* Order, *Cao* (Doc. No. 59) (July 9, 2009).  During this time the Commission served written discovery, took depositions, and obtained an expert report and a declaration from a former Member of Congress.  Briefing on the proposed facts and the certification of questions continued for another two months, and the district court ultimately made findings of fact and certified some questions in January 2010, more than a year after the motion to certify was filed.  *Cao v. FEC*, 688 F. Supp. 2d 498 (2010).  The district court's order and findings of fact were 97 pages long.  *Id.*  The Fifth Circuit issued its opinion in September 2010, almost two years after the complaint was filed.  *Cao v. FEC*, 619 F.3d 410 (5th Cir. 2010) (en banc), *cert denied*, 131 S. Ct. 1718 (2011).

As these cases show, the district court's gatekeeper role is critical to the proper functioning of section 437h, and a deliberate approach is particularly appropriate here, where plaintiffs challenge restrictions that have been in place for many decades.  Federal contractors have been prohibited from making political contributions for more than 70 years, and have had

the ability to bring a section 437h case for 37 years.  *See* Hatch Act Amendments of 1940, 54

Stat. 767, 772 § 5(a) (July 19, 1940); FECA Amendments of 1974, Pub. L. No. 93-443, § 208(a),

88 Stat. 1263, 1285-1286 (1974).  Two of the plaintiffs in this case have allegedly been

prohibited by 2 U.S.C. § 441c from making contributions for approximately eight years and five

years respectively, based upon their declarations.   (*See* Declaration of Jan W. Miller ¶ 4 (Doc.

No. 10-4); Declaration of Lawrence M. E. Brown ¶ 4 (Doc. No. 10-3).)  The third plaintiff may

be free, in any event, to make contributions in approximately one year, according to her

declaration.  (Declaration of Wendy E. Wagner ¶ 3 (Doc. No. 10-2).)  Thus, in short, the proper

course is not to rush constitutional adjudication on a sparse record, but to allow the development

of a full factual record and the refinement of constitutional issues prior to any certification to the

en banc court of appeals.

> **C.     After the Development of a Factual Record, the District Court Must Also
> Make Threshold Legal Determinations and Certify Appropriate Questions to
> the Court of Appeals**

Although the district court does not decide substantial constitutional questions pursuant

to section 437h, the court nevertheless plays an important role as to jurisdiction and the merits.

The district court must initially determine whether the plaintiffs "have [Article III] standing to

raise the constitutional claim."  *Cal. Med. Ass'n*, 453 U.S. at 192-93 n.14 (citations omitted).

The proper inquiry also encompasses the requirements of statutory standing, specifically whether

plaintiffs belong to one of the three classes of potential claimants enumerated in section 437h:

"[t]he Commission, the national committee of any political party, or any individual eligible to

vote in any election for the office of President."  *See Bread PAC*, 455 U.S. at 581.  Although the

statements in plaintiffs' declarations appear to support standing, the Commission is entitled to

conduct discovery to confirm that the declarations are accurate and to clarify other matters relevant to standing.

District courts also have the obligation to certify questions under section 437h only after determining that the issues presented are "neither insubstantial nor settled." *Cal. Med. Ass'n*, 453 U.S. at 192-93 n.14; *see also Mott v. FEC*, 494 F. Supp. 131, 134 (D.D.C. 1980) (section 437h review available "only where a 'serious' constitutional question was presented" (quoting Senator James L. Buckley, sponsor of the amendment that became section 437h, 120 Cong. Rec. 10562 (1974))); *Buckley v. Valeo*, 387 F. Supp. 135, 138 (D.D.C. 1975) (section 437h certification appropriate where "a substantial constitutional question is raised by the complaint"), *remanded on other grounds*, 519 F.2d 817 (D.C. Cir. 1975).  Like a single judge who is asked to convene a three-judge court to hear a constitutional challenge, a district court may decline to certify a particular question under section 437h.  *See Goland v. United States*, 903 F.2d 1247, 1257 (9th Cir. 1990); *Mott,* 494 F. Supp. at 134.  Even if a question differs slightly from settled law, it may be inappropriate for certification.  *See Mariani*, 212 F.3d at 769 ("not every sophistic twist that arguably presents a 'new' question should be certified" (quoting *Goland*, 903 F.2d at 1257)).  And as noted above, the district courts in the recent *SpeechNow* and *Cao* cases did not certify any questions until adequate factual records had been created and full briefing had occurred as to certification.  Indeed, the *Cao* district court reframed one of plaintiffs' proposed constitutional questions and concluded that many of plaintiffs' proposed questions were too insubstantial to merit certification, a ruling the Fifth Circuit upheld.  *Cao*, 688 F. Supp. 2d at 542 ("the Court will exercise its discretion in fashioning a question for the Fifth Circuit that more precisely captures the Constitutional difficulty raised by the plaintiffs' arguments"); *id*. at 535-

39, 542-45, 548-49 (denying certification of certain questions); *Cao*, 619 F.3d at 417-20

(affirming denial of certification of certain questions).

Plaintiffs acknowledge that "frivolous or plainly foreclosed" claims should not be

certified.  But they assert — wrongly — that their claims do not fall into those categories

because "[t]here is no case of which we are aware involving a challenge to the constitutionality

of section 441c, and the facts surrounding the Equal Protection and First Amendment claims …

show that the claims are plainly not frivolous."  (Mem. at 4-5.)  In fact, there is at least one case

in which a constitutional challenge to section 441c was made and rejected.  *See FEC v. Weinsten*

*and Winfield Mfg. Co.*, 462 F. Supp. 243, 249 (S.D.N.Y. 1978) (ruling on challenge regarding

corporate government contractors).

Furthermore, a claim might be foreclosed by cases that do not address the same statute if

courts have upheld materially indistinguishable state statutes.  And many cases address the

constitutionality of similar state or municipal restrictions on the participation of government

contractors in election campaigns.  *See, e.g., Green Party of Conn. v. Garfield*, 616 F.3d 189 (2d

Cir. 2010); *Ognibene v. Parkes*, 599 F. Supp. 2d 434 (S.D.N.Y. 2009).  It would be premature to

conclude that the "facts" underlying plaintiffs' claims show they "are plainly not frivolous"

when there has not even been any discovery to determine all of the relevant facts.  Even if both

the Equal Protection claim and the First Amendment claim warrant certification, the framing of

any certified questions would benefit from full fact development and briefing before this Court.

The district court's role is critical in assuring that section 437h operates efficiently.  If

this Court determines that some questions require reformulation or should not be certified at all,

as the *Cao* court did, it reduces the substantial disruption to the D.C. Circuit that en banc

consideration involves.  As the Ninth Circuit observed, "if mandatory en banc hearings were

multiplied, the effect on the calendars of this court as to such matters and as to all other business might be severe and disruptive." *Cal. Med. Ass'n v. FEC*, 641 F.2d 619, 632 (9th Cir. 1980).

## II.  CONCLUSION

Plaintiffs' request to certify questions to the D.C. Circuit under 2 U.S.C. § 437h is premature.  Plaintiffs' constitutional claims require the development of an adequate factual record and subsequent briefing to determine what questions, if any, should be certified. Accordingly, this Court should deny plaintiffs' motion.  After the parties have submitted a Rule 16 report, the Court should set a schedule for discovery, to be followed by the submission of proposed factual findings and briefing on those proposed findings and the certification of specific questions.

Respectfully submitted,

Anthony Herman (D.C. Bar No. 424643)
General Counsel

David Kolker (D.C. Bar No. 394558)
Associate General Counsel

Harry J. Summers
Assistant General Counsel

Holly J. Baker
Attorney

/s/ Seth Nesin
Seth Nesin
Attorney

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street, NW
Washington, DC  20463
Telephone:  (202) 694-1650
December 5, 2011                           Fax:  (202) 219-0260

15